IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

KRISTINA HEMPEL-DUBOIS,

        Plaintiff

v.                                  CIVIL NO. 1:11-cv-00009-JD

PORTFOLIO RECOVERY ASSOCIATES, LLC,

        Defendant.

**COMPLAINT**

COMES NOW the Plaintiff, **KRISTINA HEMPEL-DUBOIS**, by counsel, and for her complaint against the Defendant, alleges as follows:

**PRELIMINARY STATEMENT**

1. Portfolio Recovery Associates, LLC ("PRA") is a debt-buyer, purchasing for pennies on the dollar electronic spreadsheets listing credit card accounts allegedly owing to the seller of these large groups of accounts. PRA does not purchase any underlying account documents – it does not purchase credit card applications, billing records, payment records, account notes or anything else beyond a electronic list of consumers. This case is about PRA's purchase and thereafter unlawful and maliciously persistent attempts to force the Plaintiff to pay two of these asserted debts – neither of which she actually owed.

2. Over the course of the relevant time period, PRA made close to 100 collection calls; sued and then lost its collection mill lawsuits with prejudice, continued to mail collection notices, and claimed to the national credit reporting agencies on multiple occasions – both before and after the state court had ruled that no debt was owed – that it substantively "verified" that it had proof the accounts were owed.

3. The Plaintiff now sues PRA upon four causes: the state torts of Malicious Prosecution and/or Abuse of Process; violation of New Hampshire Chapter 358-C, prohibiting unfair, deceptive and unreasonable collection practices; numerous violations of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA") and violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b).

## JURISDICTION

4. The subject jurisdiction of this Court is conferred both on removal and independently by Federal Question and Supplemental jurisdiction, 28 U.S.C. §§1331 and 1367, and 15 U.S.C. §1681(p). Plaintiff resides in this District and significant parts of the Plaintiff's claim occurred in New Hampshire.

## PARTIES

5. The Plaintiff, Kristina Hempel-Dubois, is a single mother with a home located at 50 Tibbetts Road, Gilmanton Iron Works, New Hampshire, with a mailing address of PO Box 298, Gilmanton Iron Works, New Hampshire 03837.

6. The Defendant, Portfolio Recovery Associates, LLC, a/k/a Portfolio Recovery Associates ("***PRA" or "Portfolio***") is a foreign limited liability company existing pursuant to the laws of the State of Delaware. Portfolio maintains as its principal business address, 120 Corporate Boulevard, Riverside Commerce Center, Suite 100, Norfolk, Virginia 23302-4962. Portfolio is engaged in the business of purchasing debt ("junk debt buyer") and debt collection activities. Portfolio is a "debt collector" under RSA 358-C:1,VIII, and a furnisher of credit information under the Fair Credit Reporting Act, U.S.C. 15 U.S.C. §§ 1681, *et seq*.

**FACTS**

7. Beginning in June of 2005 and continuing thereafter, the Defendant contacted the Plaintiff claiming that the Plaintiff was indebted to *PRA* for a certain credit card issued to her by Providian National Bank and another credit card account through an unknown bank but assigned for collection to it by Midland Credit Management. The Plaintiff disputed the indebtedness on several occasions and requested a validation of the indebtedness seeking copies of the contract which assigned the debt to PRA, a copy of the credit card agreement and an account summary. The Defendant failed and refused to provide any of the information sought by the Plaintiff and ignored all her requests for these documents.

8. *PRA* then engaged in a course of conduct beginning in June of 2005, and lasting for the next four years, of attempts to collect the alleged indebtedness from your Plaintiff, which course of conduct included unceasing phone calls to the Plaintiff's home and cell phone, some of them through an autodialer, with the phone calls occurring seconds or minutes apart, made to cause annoyance, alarm and harassment to your Plaintiff, and seeking to force your Plaintiff to pay a debt to the Defendant that the Plaintiff did not owe. The phone calls continued even though Plaintiff had written to *PRA* requesting that there be no phone calls to her home or her place of business.

9. In April of 2007, the Defendant brought suit against the Plaintiff in the Laconia District Court in a two count writ alleging the Plaintiff was obligated and indebted to *PRA*, as an assignee of Providian National Bank, for a MasterCard account number 5542 8522 0058 6871; and as assignee of Midland Credit Management for an

3

Aspire Visa Credit Card, Account number 4146 8500 0032 60945.  The Plaintiff initially filed a *pro se* appearance, which document denied the **PRA** allegations.

10. With reference of the Providian account, at the time **PRA** brought suit it did not possess a copy of the alleged credit card contract between the issuing bank and Kristina Dubois, it did not have the terms of the credit card agreement, including the interest rate to be charged or the manner in which late fees, if any, would be assessed, it did not have an account summary showing charges made and payments made thereon, and it did not have the necessary documents to show how the indebtedness allegedly due was calculated.  The Defendant only possessed a one page electronic sheet from the successor to the Providian Bank, Washington Mutual, claiming Dubois was indebted to Providian, but no other documentation concerning the alleged indebtedness was in the Defendant's possession.

11. With reference to the Aspire Visa account, **PRA** did not have a copy of the alleged credit card contract between the issuing bank and Kristina Dubois, it did not have the terms of the credit card agreement, including the interest rate to be charged or the manner in which late fees, if any, would be assessed, it did not have an account summary showing charges made and payments made thereon, and it did not have the necessary documents to show how the indebtedness allegedly due was calculated.  The Defendant only possessed a one page electronic sheet from Midland Credit Management, who assigned the debt to **PRA** and who received the indebtedness from Jefferson Capitol System, LLC, another debt collecting company.

12.     Midland Management, Inc., (a/k/a Midland Funding, LLC and "Encore") does not have a reliable reputation in the debt collection industry because it is notorious

for lacking necessary documentation and for engaging in the practice of supplying to courts, in house generated affidavits by employees who do not have actual knowledge of an account origin, history, terms and the outstanding balance.   As with PRA, Midland has been sued repeatedly for its failure to verify the correctness of debts it attempts to collect.

13. The Defendant notified the Consumer Reporting Agencies (CRA's) that the two obligations were the responsibility of the Plaintiff and failed to notify the CRA's that the Plaintiff disputed those debts. The Plaintiff also notified credit reporting agencies that she disputed the indebtedness and requested that those items be removed from her report, but the Defendant wrongfully verified said indebtedness and the credit reporting agencies continued to report these items as obligations of the Plaintiff.

14. After suit was brought, *PRA* then filed a petition to attach with notice in the Laconia District Court, but did not follow New Hampshire Procedure, Court Rules or New Hampshire law (RSA 511-A) requesting orders of notice and thereafter have the sheriff serve a copy of the petition to attach on the Plaintiff. Rather, *PRA* claimed that it had "served" the petition to attach by mail on the Plaintiff, contrary to the New Hampshire practice and procedure.   Further, PRA alleged that it had "recovered judgment, including interest and costs, in an amount in excess of $7,500.00."   That statement was made under oath by a legal specialist employed by *PRA*, known as Tina Lintz.   Her oath was taken in the Commonwealth of Virginia, the state where PRA is located.   Said allegation was false because *PRA* had not recovered any judgment against the Plaintiff.

15. Because of *PRA*'s false allegation that it had already recovered judgment and

5

because the Plaintiff was not properly served with notice in accordance with New Hampshire procedure, the Plaintiff did not timely object to the requested attachment, and the court allowed the attachment, and Plaintiff received notice thereof when she was served by writ of attachment on July 9, 2007, when a deputy sheriff, at a social gathering, served the Plaintiff at her home, causing great embarrassment and emotional stress.

16. Thereafter, **PRA** claimed it was entitled to summary judgment and submitted copies of various documents to the court purportedly to show assignment of the two debts to **PRA**, and allegedly showing that a payment had been made on account by the Plaintiff, which documents were not true, were misrepresentations and an attempt to show the court that **PRA**'s claim was viable and not barred by the statute of limitations, and that **PRA** was properly assigned these two obligations. These representations concerning payment made and assignment of the indebtedness were false. The summary judgment attempt failed and the court scheduled a hearing on the merits of this matter on April 9, 2008.

17. The Plaintiff initially filed a pro se appearance, which document denied the **PRA** allegations. However, because of Portfolio's strenuous collection activities, the Plaintiff, at great expense, hired an attorney, Arthur W. Perkins of Concord, New Hampshire to represent her interests at the trial.

18. During the course of the Laconia District Court proceedings, **PRA** obtained an affidavit from an employee of Washington Mutual Bank, the successor in interest to the Providian Bank, allegedly signed by a designated agent, "Martha Kunkle, MM" dated July 2, 2007, which allegedly verified the indebtedness of Kristina Dubois to the Providian Bank. However, Martha Kunkle did not work for either the Providian Bank or

6

Washington Mutual, although her daughter may have. Martha Kunkle died prior to July 2, 2007, the date that her signature was forged on the affidavit. PRA learned in January of 2008 that the Kunkle affidavit was a forgery and a fraud. Nevertheless, PRA thereafter continued with its collection action in the Laconia District Court knowing that it lacked reliable documents to prove that Kristina Dubois was indebted either to the Providian Bank or to the bank that issued the "Aspire Visa".

19. Following the hearing on the merits in April of 2008, the Laconia District Court granted the Plaintiff's motion for a directed verdict because **PRA** was unable to prove that the Plaintiff was indebted to **PRA**.

20. Following the adverse ruling in the Laconia District Court, **PRA** continued and intensified its collection activities by writing and calling the Plaintiff at her home and on her cell phone, some calls generated by automated equipment, even though **PRA** was aware that it had lost its lawsuit and that Kristina Dubois was represented by an attorney, which phone calls and letters from **PRA** violated the New Hampshire Unfair, Deceptive and Unreasonable Collection Practices Act, and the TCPA.

21. Following the directed verdict in Plaintiff's favor in the Laconia District Court the Plaintiff learned that the Consumer Reporting Agencies were still reporting the Portfolio indebtedness as previously set forth herein as the obligation of the Plaintiff.

22. The Portfolio reporting was inaccurate. The Plaintiff was never obligated on these accounts and/or never legally responsible for same.

23. The Plaintiff had disputed these Portfolio accounts with the Consumer Reporting Agencies (CRAs), but did so again by letter to the CRAs dated June 19, 2009.

24. On or about July 16, 2009, Equifax reported its results of an investigation to

7

the Plaintiff and advised the Plaintiff that the Portfolio collection account had been verified by Portfolio and that the account would remain on the Plaintiff's credit report.

25. Plaintiff then brought suit in the Belknap County Superior Court alleging *inter alia,* malicious prosecution, abuse of process, and violation of the New Hampshire Unfair, Deceptive and Unreasonable Collection Practices Act.

26. On November 22, 2010, Defendant filed a motion for summary judgment in the state proceeding claiming that PRA had instituted the Laconia District Court collection action in good faith, with probable cause and based on evidence it believed entitled it to a judgment. It claimed as the basis for its "good faith" reliance an affidavit purportedly executed by Martha Kunkle and an affidavit from Midland Credit Management. At the time that PRA submitted these declarations to the state court – and to this court by removal- PRA was aware that the affidavits it attached to its pleadings in November of 2010 (the Kunkle affidavit) were both fraudulent.

27. As to the Kunkle affidavit, Portfolio had been sued much earlier in a class action matter in Montana because of its use of the Kunkle affidavit and paid more than one million dollars in damages with a final fairness hearing expressly settling New Hampshire Unfair, Deceptive and Unreasonable Collection Practices Act claims. (Plaintiff was not a class member). In public documents, PRA admitted that it knew of the falsity of the Kunkle affidavit earlier than 2008 and that it had never used such affidavits in any court matter since that date. Yet PRA attached the same affidavit in November of 2010 in support of its motion for summary judgment in the Belknap County Superior Court.

28. PRA knew or should have known that the affidavit supplied in support of

the Aspire Visa card debt being the debt of Kristina Dubois was not to be relied upon because the affiant, one Tina Cote, did not have personal knowledge of documents from the bank that issued the credit card, or personal knowledge of the documents of Jefferson Capitol Systems, Inc., the debt collector that assigned the alleged indebtedness to Midland Credit Management. Said affidavit not being of personal knowledge could not be relied upon and should not have been attached to Portfolio's pleadings. At the time that it used the false Midland affidavit, it knew that Midland had itself been enjoined in an Ohio class action from using similarly false affidavits. In fact. On March 29, 2011, the Attorney General in one of Midland's home states, Minnesota, has launched and filed its own investigation of the fraud affidavits.

29. Plaintiff's counsel spent many hours preparing an objection to PRA's motion for summary judgment, which objection was due January 7, 2011. On or about January 4, 2011, Plaintiff's counsel learned of the falsity of the Kunkle affidavit and was in the process of preparing an appropriate pleading when on the eve of the objection being due, Portfolio requested removal of the State action to the United States District Court for the District of New Hampshire. Even though the case had been removed, Portfolio's attorney wrote the Belknap County Superior Court and withdrew its motion for summary judgment (See Document 7 in the instant case). Said withdrawal occurred after the Plaintiff's counsel called Defendant's counsel on January 17, 2011, and disclosed his discovery of the falsity of the Kunkle affidavit.

30. PRA thus had every reason to doubt the accuracy of its electronic list of accounts to include the Plaintiff's name and address, and no good faith reason to believe it could verify the debts as true and correct.

31. Upon information and belief, Plaintiff alleges that on one or more occasions Equifax, Trans Union and Experian forwarded Plaintiff's disputes to *PRA*. Upon information and belief, *PRA* was provided notice of Plaintiff's disputes and despite this notice, failed and refused to investigate and correct it's inaccurate reporting.

### COUNT ONE: VIOLATION OF FAIR CREDIT REPORTING ACT
### 15 U.S.C. §1681s-2(b)

32. Plaintiff realleges and incorporates paragraphs 1 through 31 above as if fully set out herein.

33. On one or more occasions within the two years prior to the filing of this suit, by example only and without limitation, *PRA* violated the Fair Credit Reporting Act, 15 U.S.C. §1681s-2(b) by failing to fully and properly investigate the Plaintiff's disputes of the *PRA* reportings; by failing to review all relevant information provided by the Consumer Reporting Agencies; and by publishing the *PRA* within Plaintiff's credit file with the Consumer Reporting Agencies after disputed through the Consumer Reporting Agencies without also including a notation that this debt was disputed.

34. As a result of this conduct, action and inaction of *PRA*, the Plaintiff suffered actual damages including without limitation, by example only and as described herein on Plaintiff's behalf by counsel: loss of credit, damage to reputation, embarrassment, humiliation and other emotional and mental distress.

35. *PRA's* conduct, actions and inactions were willful, rendering *PRA* liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n. In the alternative, *PRA* was negligent, entitling the Plaintiff to recover under 15 U.S.C. §1681o.

36.  The Plaintiff is entitled to recover actual damages, statutory damages, costs and attorneys fees from **PRA** in an amount to be determined by the Court pursuant to 15 U.S.C. §1681n and §1681o.

### COUNT TWO: VIOLATION OF CHAPTER 358-C, UNFAIR, DECEPTIVE OR UNREASONABLE COLLECTION PRACTICES

37. The facts and allegations in the preceding paragraphs are realleged and incorporated by reference.

38.   The Defendant violated Chapter 358-C on multiple occasions within the statute of limitations period in one or more of the following ways, by example only and without limitation: PRA did continually call the Plaintiff on the telephone, morning, noon and night, on her home phone and on her cell phone; repeatedly, continuously, and knowing said calls would be inconvenient, with the intent to abuse, oppress and harass the Plaintiff; said calls continued after Plaintiff notified Defendant to not call her at home and also continued after Defendant lost its case in the Laconia District Court against the Plaintiff; and despite the Plaintiff having written and communicated to the Defendant not call her to collect this debt and after Portfolio was notified that the Plaintiff was represented by an attorney, the Defendant nevertheless continued to make telephone calls to Plaintiff, even after the court ruled that the Plaintiff was not indebted to the Defendant.

39. The Plaintiff, as a result of the Defendant's actions was damaged, including the sum of $200.00 plus costs and reasonable attorney's fees for each violation; and the plaintiff is also entitled to an order to restrain such collection practices as evidenced herein by permanent injunction in accordance with RSA 358-C:4, including costs and reasonable attorney's fees therefore; and because violation of 358-C also constitutes an unfair and deceptive act or practice within the meaning of RSA 358-A:2, and because

11

PRA's conduct was willful and knowing, the plaintiff is entitled to as much as three times, but not less than two times, the plaintiff's actual damages, plus costs and reasonable attorney's fees as determined by this court.

### **COUNT THREE: MALICIOUS PROSECUTION**

40. The facts and allegations in the preceding paragraphs are realleged and incorporated by reference.

41. The Defendant initiated a civil proceeding in the Laconia District Court to wrongfully collect a debt from the Plaintiff that she did not owe.

42. The Defendant did not have probable cause to initiate the civil proceeding, and the civil proceeding was brought with malice in that PRA lacked appropriate and reliable documentation to believe that the Plaintiff was indebted to it.

43. Portfolio brought said action primarily by reason of ill will, hostility and to do harm for harm's sake and/or to primarily obtain a personal advantage in said proceeding;

44. The civil proceeding ended in Plaintiff's favor.

45. Defendant's conduct constituted the tort of malicious prosecution.

46. The Plaintiff is entitled to damages and to enhanced damages as a result of Portfolio's conduct, because of the outrageous conduct in engaging in harassing phone calls within three years proceeding this suit, (as evidenced by the writ filed in the Belknap County Superior) by relying on inadequate documentation in bringing suit and relying on false affidavits in support of its claims in the Laconia District Court and the Belknap County Superior Court and Defendant's conduct taken as a whole, was wanton, malicious and oppressive.

## **COUNT FOUR: ABUSE OF PROCESS**

47. The facts and allegations in the preceding paragraphs are realleged and incorporated by reference.

48. Portfolio committed the tort of abuse of process against the Plaintiff in multiple way, for example and without limitation: by bringing an attachment proceeding in the Laconia District Court without following the laws of the State of New Hampshire and the rules of the District Court and by submitting false information in its affidavit in support of its petition to attach.

49. PRA continued with its action against the Plaintiff even though it knew the documents upon which it relied were false and unreliable; that PRA continued with the lawsuit and brought the attachment with the ulterior purpose to gain a collateral advantage to wit: preventing the sale or mortgage of said real estate, and by using the attachment process as a threat or a club;

50. Portfolio used blatantly false information that it had obtained a judgment against the Plaintiff in another state designed to convince the court to grant the attachment;

51. In June of 2008 when it learned that the affidavit which allegedly supported the Plaintiff's indebtedness to it was false, Portfolio continued to trial knowing that it lacked documentation to support its claim.

52. PRA acted in prosecution of the collection actions with improper motive and purpose.

53. The Plaintiff is entitled to damages and enhanced damages as a result of

Portfolio's conduct, because of its outrageous conduct in engaging in harassing phone within three years proceeding this suit, by relying on inadequate documentation in bringing suit and relying on false affidavits in support of its claims in the Laconia District Court and the Belknap County Superior Court and Defendant's conduct taken as a whole, was wanton, malicious and oppressive.

## COUNT FIVE: TCPA

54. The facts and allegations in the preceding paragraphs are re-alleged and incorporated by reference.

55. The Defendant placed a large number of calls, believed to exceed 100, to Plaintiff's residential and cellular phone numbers via the use of an automated telephone dialing system.

56. The Defendant's calls were not made for emergency purposes.

57. The Defendant's calls were made in an effort to collect a debt that Plaintiff did not owe.

58. The Plaintiff did not give the Defendant permission to call her, and certainly did not do so expressly. Indeed, the Defendant was aware that Plaintiff was represented by counsel and that other statutes prohibited its calls to the Plaintiff.

59. At all times relevant hereto, the Defendant was aware of the requirements of the TCPA, and its violations in this regard were therefore both knowing and willful.

60. Plaintiff is entitled to the greater of $500 per call made in violation of the statute, or her actual damages incurred as a result of these calls, including, but not limited to her emotional distress and loss of enjoyment of life.

61. In that the Defendant's violations of Plaintiff's rights pursuant to this statute

were willful and/or knowing, Plaintiff is entitled to treble damages, pursuant to 47 U.S.C. § 227(c)(5).

61. Plaintiff is entitled to the entry of an Order of this Court, enjoining the Defendant from further contacting the Plaintiff in violation of the TCPA and the FDCPA.

WHEREFORE, your Plaintiff demands judgment for actual, statutory and punitive damages against the Defendant, for injunctive relief as described herein, for treble damages pursuant to the TCPA, for attorney's fees and costs; for pre-judgment and post-judgment interest at the legal rate, and for such other relief the court deems just, equitable and proper.

**TRIAL BY JURY IS DEMANDED**.

                              Respectfully submitted,
                              Kristina Hempel-Dubois
                              By her Attorney
                              PHILLIPS LAW OFFICE, PLLC

Dated: March 31, 2011                /s/Roger B. Phillips
                              Roger B. Phillips, Esquire
                              104 Pleasant Street
                              Concord, NH 03301
                              (603) 225-2767

**CERTIFICATION**

I hereby certify that a copy of the forgoing complaint was forwarded this 31st day of March, 2011 to John-Mark Turner, counsel for Portfolio Recovery Associates.

                              /s/ Roger B. Phillips
                              Roger B. Phillips, Esquire