UNITED STATES DISTRICT COURT
For the District of New Hampshire

| | |
|---|---|
| **Kristina Hempel-Dubois** ) | |
| **Plaintiff** ) | |
| ) | |
| v. ) | Case No. 1:11-cv-00009-JD |
| ) | |
| **Portfolio Recovery Associates, LLC.** ) | |
| ) | |
| **Defendant** ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
WITH RESPCET TO COUNT FOUR OF THE FIRST AMENDED COMPLAINT**

NOW COMES the Plaintiff, Kristina Hempel-Dubois, by and through counsel and for her Memorandum in opposition to Defendant's Motion for Judgment on the Pleadings, she states as follows:

**ALLEGATIONS IN THE AMENDED COMPLAINT**

Portfolio Recovery Associates, LLC is a junk debt buyer who has tried since 2005 to use its claimed ownership of two credit card accounts to extract money from Ms. Hempel-Dubois. The Amended Complaint alleges the full history of this campaign –hundreds of collection telephone calls placed by PRA, a pre-judgment attachment of the Plaintiff's property, the State Court dispositive determination that the debts were not Ms. Hempel-Dubois's and the aborted and fraudulent attempt by PRA to use an affidavit with the posthumous signature of a dead woman to defeat state court summary judgment.[1] In the face of these allegations and background, PRA's inaccurate summary of the Amended Complaint allegations is at a minimum improper. The Court has the Amended Complaint. It can and of course will review the factual recitations paraphrased by PRA and compare same to those actually made. There is no resemblance.

---

[1] To his credit, Defendant's New Hampshire counsel withdrew the motion and affidavit his client had provided him after he was informed of the fraud and of PRA's class action settlement regarding the same affidavits.

Contrary to the false assertions made in PRA's motion, the Plaintiff has alleged again and again that she disputed and never owed the two debts PRA claims it purchased and tried to collect from Ms. Hempel-Dubois.  (See e.g. Amended Complaint ¶¶ 1, 7, 8, 9, 13, 17, 21 and 23).

In the face of this unbroken chain of disputes, PRA has continued to attempt to extract money from a woman it has no reason to believe actually owed it a debt.  PRA is a junk-debt buyer, purchasing for pennies on the dollar electronic spreadsheets listing credit card accounts allegedly owing to the seller of these large groups of accounts.  (Id ¶1).  PRA does not purchase any underlying account documents – it does not purchase credit card applications, billing records, payment records, account notes or anything else beyond an electronic list of consumers.  (Id ¶1).  In neither "account" at issue in this case did PRA possess a copy of an alleged credit card contract between the issuing bank and Kristina Dubois.  (Id. ¶¶ 10-11).  It did not have the terms of the credit card agreement, including the interest rate to be charged or the manner in which late fees, if any, would be assessed; it did not have an account summary showing charges made and payments made thereon; and it did not have the necessary documents to show how the indebtedness allegedly due was calculated.  (Id.)

To make matters worse, when PRA sought to manufacture something to support its assertions, it did so by creating two affidavits it knew were false.  The first was an affidavit purportedly signed by a person PRA knew was deceased on the date of the signature.  PRA had already been successfully sued upon and forced to settle a national class action based on these fraudulent affidavits.  (Id. ¶¶ 8, 26 and 27).  The second was from PRA's debt-buying industry com-patriot, Midland Credit, which itself had been exposed by then to have used fraudulent affidavits and itself subject to a national class action.  (Id. ¶¶ 11, 12 and 28).

With respect to the present Count – Count Four alleging Abuse of Process – PRA's factual omissions are similarly glaring.  Defendant implies that it merely "instituted a collection action against the Plaintiff" that was "later dismissed".  (Def, Mem. at 2).   But PRA ignores nearly all other related allegations in the Amended Complaint.   In particular, the Plaintiff expressly alleged:

2

> After suit was brought, *PRA* then filed a petition to attach with notice in the Laconia District Court, but did not follow New Hampshire Procedure, Court Rules or New Hampshire law (RSA 511-A) requesting orders of notice and thereafter have the sheriff serve a copy of the petition to attach on the Plaintiff. Rather, *PRA* claimed that it had "served" the petition to attach by mail on the Plaintiff, contrary to the New Hampshire practice and procedure.  Further, PRA alleged that it had "recovered judgment, including interest and costs, in an amount in excess of $7,500.00." That statement was made under oath by a legal specialist employed by *PRA*, known as Tina Lintz.  Her oath was taken in the Commonwealth of Virginia, the state where PRA is located.  Said allegation was false because *PRA* had not recovered any judgment against the Plaintiff.

(Amended Complaint 14).   During the course of the Laconia District Court proceedings, *PRA* presented to the Court affidavits it knew were false. (Id. 18).   Nevertheless, following the hearing on the merits in April of 2008, the Laconia District Court granted the Plaintiff's motion for a directed verdict because *PRA* was unable to prove that the Plaintiff was indebted to *PRA*. (Id.  19).

The Plaintiff has alleged additional facts of course.  However, the above facts form the nexus and basis of her Abuse of Process claim.

## STANDARD OF REVIEW

The Court reviews motions made under Rule 12(c) of the Federal Rules of Civil Procedure in the same manner it would review a motion made under Rule 12(b)(6) (motion to dismiss). *Pasdon v. City of Peabody,* 417 F.3d 225, 226 (1st Cir.2005).  The trial court must accept all of the moving party's well-pleaded factual allegations as true, and construe the complaint so as to draw all reasonable inferences in  her favor.  *Rivera-Gomez v. de Castro*, 843 F.2d 631, 635 (1st Cir.1988) (citations omitted).  A motion for judgment on the pleadings under Fed.R.Civ.P. 12(c) "tests the legal sufficiency of the complaint, not the liklihood of plaintiff's ultimate success."  *Furtick, et al. v. Medford Housing Authority, et al.*, 963 F.Supp. 64, 67 (D.Mass. 1997).  The court may grant a defendant's Rule 12(c) motion only if " it appears *beyond doubt* that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief." *Id*. (emphasis added)(quoting *George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.*, 554 F.2d 551, 553 (2nd Cir.1977)).  Here, accepting all the factual allegations as true and construing the

complaint in the light most favorable to the Plaintiff, the Defendant has failed to establish that it appears beyond doubt that the Plaintiff can prove no set of facts in support of her claim that would entitle her to relief.  As a result, the Defendant is not entitled to judgment on the pleadings.

## ARGUMENT

Defendant moves for judgment on the pleadings with respect to Plaintiff's claim for abuse of process on the grounds that a) no construction of the Plaintiff's factual allegations could support a claim for abuse of process, and b) Plaintiff has not alleged damages related to the abuse of process claim. Defendant's position as to both grounds is erroneous.  As a result, Defendant is not entitled to judgment on the pleadings.

### A. *PLAINTIFF'S COMPLAINT STATES A CLAIM FOR ABUSE OF PROCESS*

New Hampshire's "Abuse of Process" tort is similar to that elsewhere in common law.  It is based upon the State's express adoption of the Restatement (Second) of Torts:

> The tort of abuse of process is recognized in New Hampshire through express adoption of Restatement (Second) of Torts § 682. *Long v. Long*, 136 N.H. 25, 29, 611 A. 2d 620 (1992). The Restatement describes the cause of action as follows: "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Restatement (Second) of Torts § 682, at 474 (1977). To state a claim for abuse of process, then, one must allege (1) an ulterior purpose and (2) a willful act in *the use of process not proper in the regular conduct of the proceeding. Clipper Affiliates, Inc. v. Checovich*, 138 N.H. 271, 276, 638 A. 2d 791 (1994). The ulterior purpose is generally some form of extortion. *Id*. at 277, 638 A. 2d 791; Restatement (Second) of Torts § 682 cmt. b, at 475.

*Bryant v. Noether*, 163 F.Supp.2d 98, 110 (D.N.H. 2001).  "One who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process."  *Cabletron Systems, Inc. v. Miller*, 140 N.H. 55, 57 (N.H. 1995)(citing Restatement (Second) of Torts § 682, at 474 (1977)).  There are two essential elements to the abuse of process tort: 1) an ulterior purpose; and 2) a willful act in the use of the process not proper in the regular conduct of the proceeding.  *See id.*  "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of

property or the payment of money, by the use of the process as a threat or a club." *Id*. "There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." *Id*.

Despite PRA's feigned surprise at the imposition of an abuse of process claim against a debt buyer for its prosecution of a collection action without documentary and factual support for its claim, the allegation is not particularly remarkable.  For example, just this year, Justice Sandra Day O'Connor (sitting by designation) wrote the unanimous panel decision in the Ninth Circuit's opinion, *McCollough v. Johnson, Rodenburg & Lauinger, LLC*. 637 F.3d 939, 956-57 (9th Cir. 2011).  The opinion affirmed a jury verdict against another debt collector for the Abuse of Process tort.[2]  The elements of the abuse of process tort,

> … are satisfied where, as here, evidence indicates that the litigant willfully filed a lawsuit "with an ulterior purpose of extracting money from [the opposing party] that he did not owe," and that the litigant "had no valid legal claim against [the opposing party] and knew it, but filed an action ... nonetheless." *Seipel v. Olympic Coast Invs.,* 344 Mont. 415, 188 P.3d 1027, 1032 (2008).  Substantial evidence supports the jury's finding of liability on this claim. McCollough presented evidence that JRL filed suit to extract money from McCollough that it could not legally obtain in a collection action and that it filed a baseless action with knowledge that it had no legal claim. McCollough presented evidence that JRL filed and pursued a time-barred lawsuit against him, even though JRL's own electronic file indicated that the suit was time-barred. McCollough presented evidence that JRL continued to prosecute the collection case for four months after having been explicitly told by CACV that the June 30, 2004, payment was not grounds for extending the statute of limitations. McCollough presented evidence that JRL sought attorney's fees without confirming that McCollough had a contractual fee obligation. The jury could have inferred from this evidence that JRL's purpose in filing the lawsuit was to coerce McCollough to pay awards and fees to which it and CACV were not entitled. The jury's abuse of process verdict was supported by substantial evidence, and the district court properly denied JRL's motion for judgment as a matter of law.

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 956-57 (9th Cir. 2011).  In fact, the Restatement (Second) itself offers an example of the use of attachment in debt collection and

---

[2] While the decision was based on Montana law, both Montana and New Hampshire have adopted the Restatement (Second) elements of the claim.: "To sustain an action for abuse of process under Montana law, a plaintiff must establish two elements: '(1) an ulterior purpose; and (2) a willful act in the use of the process not proper in the regular conduct of the proceeding.' " (citation omitted). *Id*.

5

manipulation of service and venue as a classic Abuse of Process tort. Restatement (Second) of Torts § 682 (1977).[3]

The Defendant essentially claims that it is entitled to judgment on the Plaintiff's abuse of process claim because all it did was bring a suit and obtain an attachment. (Def. Mem. at 3). The Defendant minimizes its actions in an effort to avoid responsibility for using the attachment and judicial process to compel the Plaintiff to make payments to it that she did not owe. By PRA's account, its conduct was routine and without deviance from ordinary state court contract litigation. But in fact, PRA's collection efforts – maybe even its business model – are of entirely different specie. In New Hampshire, PRA initiates (and more importantly at this posture, the Plaintiff alleges that PRA initiates) its attachment actions even though it has no underlying basis to assert consumer indebtedness before a court of law. PRA does not possess underlying documents – no contracts, no notes, no payment records. Nothing. It purchases what is essentially a spreadsheet with a list of names and amounts. Then, and only then, if it needs a supporting affidavit, it works with the debt seller to create one (regardless of its veracity).

In this case, there are more than sufficient facts alleged in the Amended Complaint by which, if proven, a jury could find PRA liable for abuse of process. First, the use of civil process to collect a debt that PRA knew it could not support – it at best had no idea one way or the other whether Hempel-Dubois was actually obligated upon the accounts - constitutes the abuse of process. PRA is alleged to have used the attachment procedure and judicial system, not because it had an actual basis to believe a debt was owed, but instead as a means to make Plaintiff's resistance to the debt impracticable and unaffordable. As in *McCollough*, the debt collector's "ulterior purpose [was] extracting money from

---

[3] "3. A, an attorney to whom C has entrusted the collection of a debt owed by B, assigns C's claim to D, who resides some distance from B. In accordance with A's instructions D brings an action as assignee and causes a subpoena to issue at a time when it is extremely inconvenient for B to appear, A's purpose being to force B to pay the claim rather than to undergo the inconvenience of appearance. B not appearing, A causes a bench warrant to issue for his arrest under which B is fined and execution against his body is ordered. Before this order is carried out, B brings his action against A. A is subject to liability to B for abuse of process."

6

[the opposing party] that [s]he did not owe." *McCollough*, 637 F.3d at 956. It was extortion: "Pay us or pay a lawyer. Pay us or suffer service at your home by a Deputy Sheriff. Pay us or we will attach your property until you can get to Court to oppose us." Defendant did not institute the lawsuit, or obtain the prejudgment attachment, to collect a lawful debt owed to it. Rather, the Defendant's use of the legal process was intended to be used as a threat to force the Plaintiff to settle the matter and pay money to the Defendant, without proceeding to a trial on the merits, a trial in which the Defendant knew it lacked the evidence to prevail.

The first element of the tort, an ulterior purpose, is clearly alleged in this case. As set forth herein above, the Defendant actions were designed to compel the Plaintiff to give to the Defendant money she did not owe. The second element of the tort, a willful act in the use of process not proper in the regular conduct of the proceeding, is similarly alleged in this case. First, Portfolio brought suit without any documentation to prove that the Plaintiff had signed a credit card agreement with either Providian Bank for the Master Card account in question, or with some other bank for the Aspire Visa. Second, after initiating the judicial process by the commencement of the collection action, the Defendant petitioned for attachment of the Plaintiff's property based on blatantly false information designed to convince the court to grant the attachment. The Defendant failed to properly serve the Plaintiff with notice of the hearing on the petition, effectively depriving her of an opportunity to be heard. As a result, the court issued the attachment and the Plaintiff's property was subsequently attached. The attachment and suit in this case constitutes "legal process" for purposes of an abuse of process claim.

The Defendant also failed to properly serve the Plaintiff notice of the petition to attach her property in accordance with court rules, effectively denying her the opportunity to be heard and ensuring that its version of the facts would be uncontested. As the judge in a preliminary order in the Laconia District Court action noted in its order of October 18, 2007:

> Plaintiff also filed a Petition to Attach with Notice which was granted without objection on June 15, 2007. At the time the Court granted the attachment it was under the impression it had been served at the same time as the writ; which turned out not to be the case.

7

(Order of Laconia District Court, D. Huot, October 18, 2007, p.1). As a result, the attachment was issued and had the effect intended by the Defendant, to cause the Plaintiff great embarrassment, humiliation, and stress, in order to compel her to pay money to the Defendant. Such conduct poses a significant threat to the integrity of the justice system that cannot be permitted. The use of the legal process by an unscrupulous entity to extort money from the public is exactly the type of conduct the abuse of process tort was intended to address.

In *Long,* the New Hampshire Supreme Court identified a number of factors to be considered in determining whether an action involves legal process for purposes of an abuse of process claim. The factors include whether the court exercised its powers over the Plaintiff, whether it issued orders of notice, whether it granted the Plaintiff's request, and whether the court's authority was used to compel a party to do or forbear from doing anything. Nearly all of these factors are alleged in this case. The district court exercised its powers over the Plaintiff by ordering that her property be attached. In addition, the district court granted the Defendant's request when it attached the Plaintiff's property. Finally, the court's authority was used to forbear the Plaintiff from selling or transferring her property. As a result, the requirement of "legal process" is met in this case.

In its motion, the Defendant argues that it is entitled to judgment on the pleadings on the Plaintiff's abuse of process claim because the facts in this case are similar to those in *Clipper Affiliates, Inc. v. Checovich*, 138 N.H. 271, 276, 638 A. 2d 791 (1994). However, this case is easily distinguished from in *Clipper*. In *Clipper*, an employee (Checovich) provided his supervisor's (Gilmore) estranged wife with corporate financial information for use in her divorce proceedings three days after he was terminated. Id. at 273. Thereafter, Gilmore sued Checovich in the name of the company (Clipper Affiliates) for breach of contract and breach of employment/fiduciary duties. Id. Checovich counterclaimed alleging abuse of process, among other claims. *Id*. It is worth noting that in *Clipper*, the New Hampshire Supreme Court acknowledged that the abuse of process claim was based upon legal process that included both an attachment and the commencement of a lawsuit, as is the case here.

In *Clipper*, the NH Supreme Court specifically found that no ulterior or illegitimate purpose was

alleged by Checovich. Id. at 277.  Unlike here, the petition to attach with notice was successfully challenged, and "sought only security for a contemplated judgment in the underlying action." *See id*.  The present case is distinct from *Clipper* because Plaintiff has alleged that legal process was used to compel her to give the Defendant money it was not owed, as a form of extortion, not merely to as retribution for a bad act, as was the case in *Clipper*.  There is also no allegation of false allegations, fraudulent affidavits, and improper procedure, as is the case here.  Consequently, Clipper is not directly applicable to the facts of this case and does not require judgment on the pleadings as the Defendant suggests.

B. *PLAINTIFF'S AMENDED COMPLAINT SUFFICIENTLY ALLEGES DAMAGES RELATED TO THE ABUSE OF PROCESS CLAIM.*

The Defendant also asserts that it is entitled to judgment on the pleadings because the Plaintiff failed to allege that she was harmed by the alleged abuse of process.  On the contrary, the Plaintiff alleged significant damages flowing from the Defendant's conduct.

The Complaint (Count FOUR) clearly states that the Plaintiff claims damages and incorporates all of the preceding paragraphs which set forth the stress, anxiety and mental anguish that the Plaintiff suffered through the actions of *PRA*.  In addition to the anxiety and emotional turmoil by being named as a defendant in a lawsuit, she also suffered worry by having her real estate attached, adversely affecting her ability to refinance or sell her property.  Moreover, the Plaintiff was concerned that the attachment may adversely affect her credit report.  In addition, the plaintiff expended several thousand dollars in legal fees in defeating *PRA's* wrongful claim that the Plaintiff was indebted to it for credit card obligations.

## CONCLUSION

WHEREFORE, the Plaintiff respectfully asks this Court to Deny the Motion for Judgment on the Pleadings; and Grant such other and further relief as the court deems just and equitable.

                                            Respectfully submitted,

                                            Kristina-Hempel-Dubois
                                            by her attorneys
                                            Phillips Law Offices

Dated June 20, 2011                              _____/s/_____

> Roger Phillips, Esq.
> Phillips Law Office, PLLC
> Concord, NH 03301
> (603) 225-2767

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that on this 20th day of June, 2011, I served a copy of the foregoing via the Court's ECF system on:

John-Mark Turner, N.H. Bar. No. 15610
Jason D. Gregoire, N.H. Bar No. 20092
1000 Elm Street, P.O. Box 3701
Manchester, NH 03101
iturner@sheehan.com

> _____/s/_____
> Roger Phillips, Esq.