UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


Kristina Hempel-Dubois

   v.                                            Civil No. 11-cv-09-JD
                                                   Opinion No. 2011 DNH 126

Portfolio Recovery
Associates, LLC


O R D E R

    Kristina Hempel-Dubois sued Portfolio Recovery Associates, LLC ("PRA") in state court, alleging that PRA violated various federal and state laws in its efforts to collect debts it claimed Hempel-Dubois owed on two credit card accounts.  PRA removed the case to federal court.  PRA now moves for judgment on the pleadings with respect to Hempel-Dubois's claim for abuse of process, in Count IV of the Amended Complaint.


Standard of Review

    "The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion."  Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005).  The court "must accept all of the nonmovant's well-pleaded factual averments as true, and draw all reasonable inferences in [her] favor."  Id.  The plaintiff must allege "a plausible entitlement to relief," however, meaning "a

claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 559 (2007). The plausibility standard requires more than labels, conclusions, or a mere recitation of the elements of a cause of action. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Plausibility does not require allegations amounting to a probability but needs more than a mere possibility. Id.

In reviewing a motion under Rule 12(c), "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007). It may consider "documents the authenticity of which are not disputed by the parties; documents central to the [plaintiff's] claim; and documents sufficiently referred to in the complaint." Id. (internal brackets and ellipses omitted).

## Background

Unless otherwise noted, the following facts are drawn from Hempel-Dubois's complaint.

PRA engages in the business of purchasing bad debts for pennies on the dollar and attempting collection. PRA receives information about the credit card accounts it purchases in the form of electronic spreadsheets. It does not purchase the

underlying credit card applications, billing records, payment records, or account notes.

In June of 2005, PRA contacted Hempel-Dubois, claiming that she owed money on two credit card accounts: one issued to her by Providian National Bank, and the other issued by an unknown bank but assigned to PRA by Midland Credit Management. Hempel-Dubois disputed the debt and requested that PRA provide her with copies of the credit card agreement, account summary, and contracts assigning the debts to PRA. PRA refused to provide the documents. For the next four years, PRA attempted to collect on the alleged debts.

As part of its collection efforts, in April of 2007, PRA brought suit against Hempel-Dubois in Laconia, New Hampshire, District Court. PRA alleged that Hempel-Dubois owed money to PRA as an assignee of Providian National Bank, on MasterCard Account No. 5542 8522 0058 6871 ("Mastercard Account"), and as an assignee of Midland Credit Management on Aspire Visa Credit Card Account No. 4146 8500 0032 60945 ("Visa Account"). At the time it filed suit, PRA possessed only two one-page electronic spreadsheets -- one from Washington Mutual as the successor to Providian Bank and one from Midland Credit Management -- indicating Hempel-Dubois's indebtedness on the Mastercard and

Visa accounts, respectively.[1]  PRA did not have any documents showing how Hempel-Dubois's indebtedness on the accounts was calculated, nor did it have copies of the alleged credit card contracts between Hempel-Dubois and the issuing banks, the terms of the credit card agreements, or account summaries outlining any charges or payments made to the accounts.

Hempel-Dubois initially filed a pro se appearance in the collection action denying PRA's allegations.  She alleges here that PRA's "strenuous collection activities" forced her to hire an attorney, "at great expense," to represent her interests in that case. (Amended Complaint, Doc. 13, ¶ 17).

After filing suit, PRA filed a petition to attach with notice in the Laconia District Court.  In the petition, PRA employee Tina Lintz falsely stated that PRA had already "recovered judgment, including interest and costs, in an amount in excess of $7,500." (Amended Complaint, Doc. 13, ¶ 14). Hempel-Dubois alleges that PRA did not properly serve the petition to attach in accordance with New Hampshire law, and that, as a result of this failure, she did not timely object to

---

[1]Midland Credit Management received the Visa account from Jefferson Capitol System, LLC, another debt collecting company.

the requested attachment.[2]  The court allowed the attachment.  On July 9, 2007, a deputy sheriff served the writ of attachment on Hempel-Dubois during a social gathering at her home, causing Hempel-Dubois embarrassment and emotional stress.

PRA moved for summary judgment in the collection action. Hempel-Dubois alleges that PRA made false representations to the court that it was properly assigned the Mastercard and Visa accounts and that its claim was not barred by the statute of limitations.  She alleges that in support of these representations, PRA submitted false documents purporting to show the assignment of the two debts to PRA and that Hempel-Dubois had made payments on the accounts.

At some point during the course of the collection action, PRA obtained an affidavit from Washington Mutual Bank, Providian Bank's successor in interest, which purported to verify Hempel-Dubois's indebtedness to Providian Bank.  The affidavit, which was dated July 2, 2007, appeared to be signed by "Martha Kunkle/mm," whom the affidavit identified as "the designated agent of Providian National Bank."  (Doc. 6, Ex. 1, p. 3).  In

---

[2]Hempel-Dubois alleges that PRA failed to file an order of notice with the court or have a sheriff serve a copy of the petition to attach.  She alleges that PRA "claimed that it had 'served' the petition to attach by mail on the Plaintiff."  (Doc. 13, ¶ 14).

fact, Hempel-Dubois alleges, Martha Kunkle never worked for either Providian Bank or Washington Mutual and died prior to the date her signature was forged on the affidavit. Hempel-Dubois alleges that by January of 2008, Providian knew that the affidavit was fraudulent and that it lacked reliable documents to prove that Hempel-Dubois was indebted on either account.[3] Nevertheless, it continued with its collection action in the Laconia District Court.[4]

In April of 2008, following a hearing on the merits, the Laconia District Court granted Hempel-Dubois's motion for a directed verdict, on the ground that PRA was unable to prove Hempel-Dubois's indebtedness on either account.

---

[3] Hempel-Dubois alleges that as part of a Montana class action unrelated to the present case, PRA stated in court documents that "it knew of the falsity of the Kunkle affidavit earlier than 2008. . . ." (Amended Complaint, Doc. 13, ¶ 27).

[4] In her objection to PRA's motion for judgment on the pleadings, Hempel-Dubois cites her allegation, in the Amended Complaint, that PRA also knew or should have known that it could not rely on an affidavit it received from Midland Credit Management. This allegation is irrelevant to Hempel-Dubois's abuse of process claim. The Midland affidavit, which purported to verify Hempel-Dubois's indebtedness on the Visa Account, was signed in August of 2010, more than two years after the resolution of the Laconia District Court case upon which Hempel-Dubois's abuse of process claim is based. (Doc. 6, Ex. 1, p. 2).

Discussion

Hempel-Dubois alleges that PRA committed abuse of process both in filing its attachment proceeding and in continuing to pursue the Laconia collection action against her after learning that the documents upon which it relied were unreliable. PRA moves for judgment on the pleadings, arguing that Hempel-Dubois has not alleged sufficient facts, as a matter of law, to obtain judgment on the abuse of process claim.

New Hampshire recognizes the tort of abuse of process in accord with Section 682 of the Restatement (Second) of Torts, which states that "[o]ne who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed, is subject to liability to the other for harm caused by the abuse of process." Restatement (Second) of Torts § 682, at 474 (1977); see Long v. Long, 136 N.H. 25, 29 (1992). "The tort comprises two essential elements: an ulterior purpose and a wilful act in the use of process not proper in the regular conduct of the proceeding." Cabletron Systems, Inc. v. Miller, 140 N.H. 55, 57 (1995). "The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club." Id. "There is, in other

words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort." Id.

PRA argues that Hempel-Dubois has failed to allege any facts to show that PRA used the attachment procedure for an improper purpose. PRA contends that to the extent that Hempel-Dubois bases her abuse of process claim on PRA's litigation of the collection action, the allegations serve to support her malicious prosecution claim, not her abuse of process claim. PRA also argues that Hempel-Dubois has failed to identify any damages suffered as the result of PRA's alleged abuse of process.

A. Attachment

Hempel-Dubois alleges that PRA committed abuse of process in obtaining an attachment against her real estate in the collection action. Hempel-Dubois contends that PRA improperly secured the attachment by failing to follow court and state procedures for serving Hempel-Dubois, thereby depriving her of her opportunity to be heard, and by falsely representing to the court that it had already obtained a judgment against her. Hempel-Dubois alleges that PRA's objective in obtaining the attachment was to compel Hempel-Dubois to make payments on a debt she did not owe.

"The issuance of process itself. . . does not constitute the tort." Cabletron Syst., 140 N.H. at 58. "[T]he purpose for which the process is used, once it is used, is the only thing of importance." Id. There is no liability for abuse of process when a party "has done nothing more than carry out the process to its authorized conclusion," such as using the attachment process to seek security for a contemplated judgment in the underlying action. Clipper Affiliates, Inc. v. Checovich, 138 N.H. 271, 277 (1994). There must be an allegation, either direct or indirect, that the process in question was "effected for the purpose of compelling [the plaintiff] to do something, or give up something unrelated to the proceedings." Bryant v. Noether, 163 F. Supp. 2d. 98, 111 (D.N.H. 2001)(citing Clipper Affiliates, Inc., 138 N.H. at 277; Restatement (Second) of Torts § 682 cmt. b).

PRA's purpose in obtaining the attachment, as alleged by Hempel-Dubois, was to prevent the sale or mortgage of Hempel-Dubois's property, and thus to secure PRA's potential judgment in the underlying collection action. The attachment process is properly used to secure property to satisfy a judgment. Hempel-Dubois's allegations that PRA did not follow proper procedures in obtaining the attachment, and that the attachment was wrongfully granted, are irrelevant to Hempel-Dubois's abuse of process claim.

Because Hempel-Dubois does not allege that PRA sought the attachment to compel Hempel-Dubois to do something or give up something unrelated to the proceedings in the collection action, her abuse of process claim fails to the extent that it is based on PRA's petition to attach with notice.

B.   Laconia Collection Action

Hempel-Dubois claims that PRA committed abuse of process in initiating its collection action against her and in continuing to pursue that claim after learning that the documents upon which it relied were unreliable.  She cites McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939 (9th Cir. 2011) for the proposition that the prosecution of a collection claim by a debt collector without documentary and factual support can constitute abuse of process.  McCollough, however, was decided under Montana law and is not controlling here.

In New Hampshire, the malicious initiation of a lawsuit does not constitute abuse of process.  Long, 136 N.H. at 30.  As stated above, it is the purpose for which the process is used once it has issued that constitutes the tort.  Cabletron Syst., 140 N.H. at 58.  The plaintiff must also establish that some "form of compulsory process" was involved.  Long, 136 N.H. at 31. In other words, the plaintiff must establish that the defendant

invoked the court's authority to "forc[e] the performance or forbearance of some prescribed act." Id.

Hempel-Dubois's abuse of process claim fails to the extent that it is based on PRA's initiation of the collection action. To the extent that Hempel-Dubois alleges that PRA committed abuse of process by continuing its collection action after learning that Kunkle's affidavit was fraudulent, her claim also fails. She has not alleged that PRA caused the court to exercise its powers to force the performance or forbearance of a prescribed act. Her abuse of process claim thus fails as a matter of law.

## Conclusion

For the foregoing reasons, PRA's motion for judgment on the pleadings (doc. 16) is GRANTED. The abuse of process claim, Count IV, is dismissed.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

August 17, 2011

cc: Leonard A. Bennett, Esquire
    Roger B. Phillips, Esquire
    John-Mark Turner, Esquire

11